UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

                                      Case No. 10-14377

PENNSYLVANIA ACADEMY OF MUSIC
    Debtor                                 Chapter 11

### DEBTOR'S RESPONSE TO MOTION OF UNITED STATES TRUSTEE TO CONVERT CASE TO CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE OR ALTERNATIVELY TO DISMISS CASE

    AND NOW, August 18, 2010, comes Pennsylvania Academy of Music the Debtor by its attorneys, JACQUES H. GEISENBERGER, JR., P. C., and files this Debtor's Response to Motion of United States Trustee to Convert Case to Case under Chapter 7 of the Bankruptcy Code or Alternatively to Dismiss Case as follows:

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Denied. The allegations of this paragraph are denied for reasons more fully set forth under Affirmative Defenses.
12. Denied. The allegations of this paragraph are denied for reasons more fully set forth under Affirmative Defenses.
13. Denied. The allegations of this paragraph as stated are denied. Debtor avers on the contrary that it previously attended hearings in mid-June and mid-July 2010, which resulted in the entry of Orders directing Debtor to file on a weekly basis a Report commencing July 9, 2010, on a weekly basis all of its Receipts and Disbursements made since the date the Chapter 11 was filed by Debtor. Debtor specifically avers that it has filed those Report timely each and every week which enable the Court, the United States Trustee and all Creditors to closely monitor the operations of Debtor. As to the balance of the allegations of this paragraph, they are denied for reasons more fully set forth under Affirmative Defenses.
14. Denied. The allegations of this paragraph are denied for reasons more fully set forth under Affirmative Defenses.
15. Admitted.
16. Admitted.

17. Denied. The allegations of this paragraph are denied for reasons more fully set forth under Affirmative Defenses.

18. Denied. The allegations of this paragraph are denied for reasons more fully set forth under Affirmative Defenses.

19. Denied. The allegations of this paragraph are denied for reasons more fully set forth under Affirmative Defenses.

20. Debtor believes and therefore avers that the allegations of this paragraph are conclusions of law which require no responsive pleading.  If a response is deemed necessary, the allegations are denied for reasons more fully set forth under Affirmative Defenses.

### First Affirmative Defense

1. Debtor avers that it is now entering its 3rd Decade committed to providing the highest caliber of music education for students of all ages and talent levels in a nurturing and highly professional environment, fostered by faculty who themselves are active performers and skilled teachers. This faculty with two exceptions are returning for the fall semester. The mission is to create innovative and long-lasting connections between people, their community and the world through distinctive music education, performance, and cultural exchange.

2. Debtor avers that some,  if not all of its alleged failures in filing reports, was caused by the condition its books and financial records including the fact that (A) they have not been audited or closed since June 30, 2008; (B) proper journal entries have not been made on those record to reflect the building constructed and the equipment purchased by June 2008; ( C) the necessary entries have not been made to reflect a default in payments of interest and possibly other items when due in June 2009; (D) the resignation of the Chairperson of the Board and several other Trustees who had served during the construction of its new building and until June 2009 ("the Ware Board"); (E) the mass resignation on February 14, 2010, of all but 2 Trustees and all Officers of the Board ("the Falk 2 Board"); (F) the transfer of the building, other real estate, and personal property by the Falk 2 board on December 23, 2009; and (G) problems of the present Board of Trustees and a new accounting staff to wrap its hands around and get a grip on the Debtor's complex accounting software prior to filing for Chapter 11 relief.

### Second Affirmative Defense

1. Debtor avers that the software to prepare the standardized reports required by the United States Trustee for filing in this District are not posted on her Website, on the Website for Region 3,  or on the Website maintained by of The United States Trustee at the Department of Justice. Debtor further avers that in this District the software to prepare the Initial Monthly Operating Report, the Monthly Operating Reports, and the Post- Confirmation Reports is in MS Excel, is not user friendly, and is provided without a User Guide or Instructions.

2. As further support for paragraph 1 above, the allegations set forth in Paragraph 2 of Affirmative Defenses is incorporated herein by reference as though specifically set forth verbatim in this paragraph.

3. Debtor avers that it had great difficulty in hiring a new bookkeeper after filing to setup an accounting system (Quick Books) to accommodate the required reports on the cash basis for the weekly reports per court Order, and the accrual basis for the United States Trustee's Initial Monthly Operating Report, Monthly Operating Reports, and Post- Confirmation Monthly Reports.

4. Debtor avers that after its Counsel did not learn of the availability from the Office of the United States Trustee for this District of the software required to prepare the reports to conform to the reporting requirements, to wit, Initial Monthly Operating Report, Monthly Operating Report, and Post- Confirmation Monthly Report, until July 21, 2010. It was supplied immediately.

5. Debtor avers that the software could not be installed onto Debtor's existing computer network for various reasons including the lack of a knowledgeable IT person or a bookkeeper among the existing staff whereupon a temp agency was contacted and provided an individual familiar with Quick Books. That temp then setup Debtor's Quick Books, entered the information on the cash basis from May 27 through July 23, 2010, and thereafter with great difficulty was able to setup and then enter the adjusted opening balances required for the UST's reports.

6. Debtor avers that at 2:00 p.m. on August 5, 2010, the Monthly Operating Report for May 27 through June 30, 2010, was completed, cross-checked and thereafter electronically filed at or about 3:00 p.m, and then personally deposited into the United States Mails, postage prepaid, to the United States Trustee's Office in Philadelphia.

### Third Affirmative Defense

1. Debtor received a bill for the June 2010, quarterly United Sates Trustee's fee, and avers that a check was prepared and signed on or about July 19, 2010, in the amount of $325.00. Debtor avers that the check was thereafter misplaced for a period of time before mailing.

2. Debtor avers that when the error was discovered on August 10, 2010, the check was immediately placed into a first class mail envelope, stamped, and deposited into the United States Mails in Lancaster, Pennsylvania.

3. Debtor avers that the "*Failure to Pay Quarterly Fees*" was as a result of excusable neglect, should be excused, and the Unites States Trustee's Motion dismissed as to this ground.

### Fourth Affirmative Defense

1. Debtor avers that it has timely attended every Court Hearing, Initial Debtor Interview, Attended 341 Creditors Meeting and timely obeyed Orders, previously entered.
Debtor avers that Paragraph 12 and 13 of do not accurately state the wording of the statute. Allegations as a Ground for Dismissal, *Failure to File Operating Reports* are based on provisions which the Trustee for this Region has adopted, without adequately taking into consideration the technical difficulties in publishing forms which cannot be filled in by typewriter, if in fact they are still in use in most law offices or other workplace, because of the spaces provided to fill in the data; which are not computer fill in forms; which are lengthy, require many attachments, and then require multiple scans into PDF format prior to complying with the ECF requirements.

2. Debtor avers that the allegations as a Ground for Dismissal, *Failure to File Operating Reports,* as she attempts to apply this Case is arbitrary and capricious.

### Fifth Affirmative Defense

1. Debtor avers that the allegations as a Ground for Dismissal, *Ongoing Diminution of Estate,* as applied in this Case are erroneous and not supported by the prior rulings of the Court in this Case. The Court has never previously ruled that some or all of the Endowment Funds cannot be used as operating funds to carry out the 501(c)(3) charitable purposes of the Debtor.

2 Debtor further avers that it is only the failure of a few contributors to timely pay their pledges to PAM and the pre-bankruptcy conduct of at least one insider removing from PAM certain valuable real and personal assets within the preference period which led Debtor to seek authorization and approval to use Endowment Funds since filing on May 27, 2010, to meet its operating costs.

3. Debtor avers that the United States Trustee's allegation in paragraph 19 is premature and fails to define either what is "funding" or "income" for a 501(c)(3) at the start of an academic year. Debtor suggests that the components of "income" in a 501(c)(3) include tuition, unrestricted donations either "in kind" or monetary, performances or events, income from endowments, etc. Debtor avers that at the beginning of the academic year until December 31, 2010, its revenues will be adequate to carry out its mission with only minimal use of its unrestricted Endowment Funds.

4. Debtor avers that the United States Trustee's allegation in paragraph 20, is premature, based upon pure speculation, and not on the facts since the filing of this Chapter 11. The testimony previously presented at the initial hearing on the use of Endowment Funds was crystal clear that no Endowment Funds were expended by the Morton board since it took over the operation and management of the Academy in late February, 2010. The Morton Board set a goal of raising "clean money" of $125,000.00 to continue the school through the end of the 2009-2010 academic year, and was successful in that effort.

5. Debtor avers that after filing for Chapter 11 it prepared a budget and filed a Motion to Use Up to $250,000.00 of the Endowment Funds through August 31, 2010, for the purposes of running a reduced summer program including Vivace. The court has previously entered Orders permitting the use of $178,000.00 from unrestricted Endowment Funds. As of August 11, 2010, the sum of $85,000.00 has been withdrawn; an additional sum of $50,000.00 to meet the payroll due August 15, 2010 was withdrawn on August 13, 2010, making the total withdrawn $135,000.00, far less by $43,000.00 than the $178,000.00 authorized and $115,000.00 less than originally requested.

6. Debtor avers in anticipation of the new academic year starting in September 2010, it has appointed a new Dean, has retained the necessary faculty, and is in the process of successfully registering students at an increased tuition scale than in prior years, who will be taught in rented facilities, pursuant to a Lease to be presented to this court for approval momentarily.

7. Debtor further avers that since filing it has substantially reduced its monthly operating costs and "overhead" through August 31, 2010. Debtor has taken steps to increase its tuition and other revenues, reducing its dependence upon donor contributions, and shrinking its operating expenses from prior years. This effort has resulted a net bottom line improvement of over $100,000.00 per month, pointing the way to financial stability and fiscal responsibility without consuming principal of Endowment Funds to continue its operations.

6. Debtor further avers that based on current projections at least through October 31, 2010, it will not require any use of Endowment Funds.

## **CONCLUSION**

WHEREFORE, Debtor, Pennsylvania Academy of Music respectfully asks the Court to find that unusual circumstances exist such as the fact that the Debtor is a Not for Profit Corporation who has operated over at least the past year under extreme adverse financial conditions, that it has undergone in that same period 3 different Boards of Trustees, 3 different Chairpersons of the Board, a complete change of officers, etc.; that it has operated within self-imposed and Court ordered restraints, that establish that the requested conversion or dismissal is not in the best interest of creditors and the Estate, and to **dismiss without prejudice** the Motion of United States Trustee to Convert Case to Case under Chapter 7 of the Bankruptcy Code or Alternatively to Dismiss Case pursuant to 11 U.S.C. §1112(b)(1) with directions that the United States Trustee not file a similar Motion earlier than one hundred twenty (120) days except for subsequent "Cause" as defined by 11 U.S.C. §1112(b)(4) to give Debtor an opportunity to reorganize by filing a Plan and Disclosure Statement on or before December 15, 2010, and for such other and further relief as the Court deems meet and just under the circumstances.

August 18, 2010
　　　　　　　　　　　　　　　　　　　JACQUES H. GEISENBERGER, JR., P. C.
　　　　　　　　　　　　　　　　　　　By: /s/ Jacques H. Geisenberger, Jr.
　　　　　　　　　　　　　　　　　　　　　Jacques H. Geisenberger, Jr.
　　　　　　　　　　　　　　　　　　　　　I.D. No. 06947
　　　　　　　　　　　　　　　　　　　　　Attorney for Debtor and D-I-P
　　　　　　　　　　　　　　　　　　　　　WHEATLAND PLACE
　　　　　　　　　　　　　　　　　　　　　941 WHEATLAND AVE - STE 403
　　　　　　　　　　　　　　　　　　　　　LANCASTER  PA  17603-3180
　　　　　　　　　　　　　　　　　　　　　(717) 397-3500